```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                   :
TELIT WIRELESS SOLUTIONS, INC.,                                    :
                                                                   :
                              Plaintiff,                           :
                                                                   :
              -v-                                                  :   15-cv-5278 (KBF)
                                                                   :
AXESSTEL, INC.,                                                    :   OPINION & ORDER
                                                                   :
                              Defendant.                           :
------------------------------------------------------------------ X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 18, 2016
```

KATHERINE B. FORREST, District Judge:

This is a breach of contract, or, alternatively, unjust enrichment action relating to payment for a sale of goods.

In the first half of 2013, plaintiff sold and delivered to defendant electronic equipment. After defendant failed to remit payment, the parties subsequently entered into a settlement agreement ("Settlement Agreement") that provided for payment over time and other terms; payment was to be made not later than March 14, 2015. Despite this agreement, by March 2015, defendant had still not remitted payment. On July 8, 2015, plaintiff filed this action.

On October 27, 2015, defendant answered the Complaint, asserting various defenses and counterclaims. Its core contention is that goods received from plaintiff two years before were nonconforming; according to defendant, these deficiencies relieved it from its payment obligations under the Settlement Agreement.

1

Before this Court are motions for summary judgment by plaintiff on both its affirmative claims and on defendant's counterclaims.[1] Defendant has cross-moved to amend its answer and counterclaim. For the reasons set forth below, plaintiff's motions are GRANTED and defendant's motion to amend is DENIED AS MOOT.

I.  FACTS

    A.  Debt Owed to Telit

In the first half of 2013, plaintiff Telit Wireless sold and delivered to defendant Axesstel some $846,952.40 worth of electronic equipment in seven separate orders over the course of three months.[2] (See Compl. Ex. A ("Settlement Agreement," at 8.)  The orders were all invoiced between February 25, 2013 and May 22, 2013.  The orders included different electronic products at different prices, and the number of units ordered by Axesstel ranged from 5 to 30,000.  (Id.)

It is undisputed that Axesstel received, but never paid for the goods.  (Id. ¶ 1(b).)  On March 14, 2014, the parties entered into a Settlement Agreement.  (Settlement Agreement; Compl. ¶ 9; Answer (ECF No. 32) ¶ 9.)[3]  The agreement states that the parties "wish to set forth the terms of repayment of Axesstel's debt

---

[1] On February 18, 2016, the Court gave parties notice that it was converting the motion to dismiss the Counterclaims into a motion for summary judgment.  Defendant subsequently submitted further materials in support of the motion.  (See ECF Nos. 64-66.)

[2] For the purposes of this Opinion & Order, "plaintiff" refers to plaintiff and counterclaim defendant Telit Wireless Solutions, Inc., and "defendant" refers to defendant and counterclaim plaintiff Axesstel, Inc.

[3] For ease of reference, the Court refers to the Amended Answer and Affirmative Defenses separately from the Counterclaims.  The Court notes that, although captioned as an "Amended Answer," the pleading defendant filed on October 27, 2015, (ECF No. 32), is actually the very first Answer filed in this case.  It thus refers to the pleading as the "Answer."

to Telit." (Settlement Agreement ¶¶ A, B, C.) The agreement provides that Axesstel can pay off the balance of $846,952.40 in three ways: 1) credit against the balance by returning unused inventory to Telit, (id. ¶ 2); 2) credit against the balance from purchases of Telit products by a third party, Reliance Communications LLC ("Reliance"), (id. ¶ 3); and 3) direct payment, (id. ¶ 4). The full balance was to be paid off not later than March 14, 2015. (Id. ¶ 4(a).)

The Settlement Agreement also included an integration clause that stated that it "supersedes all prior agreements, whether written or oral, between the parties with respect to its subject matter (including, without limitation, any conceptual agreement, or e-mail communication) and constitutes a complete and exclusive statement of the terms of the agreement between the parties with respect to its subject matter." (Settlement Agreement ¶ 10.) It also contains a New York choice of law and forum selection clause. (Id. ¶ 7.)

Telit was able to sell 56,100 units of the goods at issue to Reliance, the third party, resulting in a $280,500 credit against Axesstel's indebtedness. (Compl. ¶¶ 16-17.) Axesstel itself failed to make any payments to Telit under the Settlement Agreement. (Answer ¶ 19.) Accordingly, as of March 2015, $682,542.40 on the original debt (excluding interest and costs later accrued) remained due and owing. (Compl. ¶ 22.)

On July 8, 2015, Telit filed the instant action, claiming that Axesstel's failure to pay breached the Settlement Agreement.[4]  (Compl. ¶¶ 19-20.)  At the time of filing, the debt, after accounting for costs and interest, was $710,864.40.  (Id. ¶¶ 16-18, 26-27.)

B. The Nonconforming Goods

Axesstel acknowledges its failure to pay Telit.  (Answer ¶ 19.)  However, in both its defenses and its Counterclaims, Axesstel asserts that one of the seven orders it placed with and received from Telit in early 2013 contained goods that were nonconforming.

According to Axesstel, "[p]rior to contracting with Telit for the purchase" for 15,000 units of a certain "CC864SGR9027015" product ("CC864") in 2013,[5] the parties had a conversation in which "Telit assured Axesstel" that these products were compatible with a product Axesstel hoped to sell.  (Counterclaim ¶¶ 2-3.)  However, after receiving the CC864s in 2013, "Axesstel discovered the . . . modules were not compatible with the [Axesstel product] as Telit had represented."  (Id. ¶ 4.)  Axesstel asserts that it did not discover the incompatibility issues until February 2015, eleven months after entering into the Settlement Agreement and two years

---

[4] Telit also claimed unjust enrichment based on the same facts as the breach of contract claim. (Compl. ¶¶ 35-38.)

[5] The purchase of 15,000 units of this specific product is reflected in the invoice appended to the Settlement Agreement.  (See Compl. Ex. A, at 8.)  Although the Counterclaim asserts that the purchase took place in spring 2014, this appears to be a clerical error and that the products were purchased in March 2013.  (Id.)

4

following its purchase and delivery of the CC864s.  (Decl. of Patrick Gray in Opp. to Pl.'s Mot. for Summ. J., Dec. 4, 2015, ECF No. 42, ("Gray 12/4/15 Decl.") ¶ 8.)

After Axesstel complained of the incompatibility in 2015, Telit "provided a software patch."  (Gray 12/4/15 Decl. ¶¶ 5-7.)  Axesstel claims that a three- to four-month delay in providing the patch resulted in its inability to complete negotiations with a third party to purchase Axesstel's product and that it lost approximately $735,000 in revenue as a result.  (Id. ¶¶ 5-7.)

      C.     The Original Sales Terms

For at least three of the seven orders that Axesstel placed with Telit, Telit supplied Axesstel with a copy of "Sales Terms and Conditions."  (See Decl. of Michael Wagner in Support of Telit Wireless's Mot. for Summ. J., ECF No. 35 ("Wagner Decl.") Ex. A.)  The Sales Terms and Conditions, dated May 2011, ("Sales Terms"), were appended to the two earliest sales orders on February 25 and March 14, 2013, and to the latest sales order on May 22, 2013.  (Wagner Decl. Ex. A.)  While Axesstel's CEO Patrick Gray stated in a declaration that he was "personally . . . unaware of and had never seen a copy of" the Sales Terms, the record shows that the Sales Terms were sent to Axesstel employees who received confirmations of the three sales orders.  (See Decl. of Patrick Gray in Opp. to Pl.'s Mot. to Dismiss, Jan. 12, 2016, ECF No. 57 ("Gray 1/12/16 Decl.") ¶7; Wagner Decl. Ex. A.)  Axesstel acknowledges that it received the Sales Terms with these three orders, but claims that there is no evidence that the Sales Terms were appended to the order of 15,000

CC864 units at issue in its Counterclaims.  Thus, Axesstel argues, the Sales Terms do not apply to that specific order.[6]

The Sales Terms provide that they "shall be the sole and exclusive terms and conditions applicable" to any sales of Telit products and services.  (Wagner Decl. Ex. A at 3.)  Among other provisions, the Sales Terms contain an integration clause, (id. at 3, ¶ 16), express limitations on all warranties, (id. at 5-8, ¶ 14), and a provision providing that "[a]ll products shall be deemed accepted by Buyer as conforming to this Agreement unless written notice of the claimed nonconformity is received by Telit within ten (10) days of delivery thereof," (id. at 4, ¶ 8).  A choice of law and forum selection clause provides that the laws and courts of North Carolina apply to "the adjudication or disposition of any claim, action, or dispute arising under or in connection with this Agreement that is not amicably settled by the parties."  (Id. at 6, ¶ 20.)  A contractual statute of limitations bars actions "arising out of or in any way connected with this agreement or products or services furnished by the seller" after two years of accrual of the cause of action.  (Id. at 5-6, ¶ 15.)

---

[6]   In his January 12, 2016 affidavit, Axesstel's CEO Patrick Gray referenced a "quotation" document dated August 6, 2012, in which a sales representative from Telit provided an estimate for 100,000 units of a certain product; the document listed six "Terms and Conditions." (Gray 1/12/16 Decl. Ex. A.) It is unclear—and does not alter the Court's determination of this motion—whether the Terms and Conditions in the quotation are legally binding.  It is undisputed that the quotation's "Terms and Conditions" provides that any product warranty expired within 12 months of date of delivery.  (Id., Ex. A.)  Thus, even if the quotation document governs the 15,000 units at issue in the Counterclaims, the Court's reasoning as discussed below remains applicable.

D.   Procedural History

As discussed above, Axesstel purchased goods and received delivery from Telit in the first half of 2013.  (See Settlement Agreement at 8.)  The parties entered the Settlement Agreement governing payment on March 14, 2014, giving Axesstel an additional year to complete payment.  (Id. at 1, ¶ 4.)  Axesstel failed to make the payments as required.  (Answer ¶ 19.)  Telit served a demand on Axesstel on March 23, 2015, (Compl. Ex. B), and commenced this action on July 8, 2015, (Compl. ¶ 24).

After a period in default, defendant Axesstel obtained counsel and filed its Answer and Counterclaim on October 27, 2015.  Axesstel asserted three counterclaims against Telit for breach of contract and breach of express and implied warranties.  (Counterclaim ¶¶ 1-28.)  It also asserted a number of affirmative defenses, including: 1) failure to state a claim, 2) estoppel, waiver, laches, and acquiescence, 3) failure to mitigate damages, 4) speculative damages, and 5) Telit's failure to perform duties by delivering defective goods.  (Answer at 3-4.)

Plaintiff moved for summary judgment on November 13, 2015, arguing that defendant's admissions—regarding the existence of the contract, its failure to make any payments, and its failure to respond to statements of account in a subsequent demand letter—results in the absence of any triable issues on the breach of contract claim.  (ECF No. 34, 36.)  Defendant opposed the motion and cross-moved to amend its Answer and Counterclaims, seeking leave to add affirmative defenses of rescission, mutual mistake, and unilateral mistake, and to supplement factual allegations and expand relief sought under its Counterclaims.  (ECF Nos. 40, 41.)

7

On December 21, 2015, the same day it filed its summary judgment reply, plaintiff moved to dismiss the Counterclaims. (ECF Nos. 50, 52.) Plaintiff argues first, that the Settlement Agreement's integration clause supersedes any claims based on breach of a prior agreement or warranty, and second, that the Sales Terms governing the original purchases in 2013 bars the Counterclaims because of its forum and jurisdiction selection clause, the statute of limitations, and express provision on limitation of warranty.

On February 18, 2016, the Court provided parties with notice that it was converting plaintiff Telit's motion to dismiss Axesstel's Counterclaims into a motion for summary judgment. Axesstel subsequently submitted further materials in support of the motion. (See ECF Nos. 64-66.) Telit did not. Plaintiff's summary judgment motions on both the affirmative claims and counterclaims are now fully briefed before this Court.

## II.  STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor at trial. Id. at 322-23.

In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).  Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial.  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal citations omitted).  In addition, "[o]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."  Porter v. Quarantillo, 722 F.3d 94, 97 (2d Cir. 2013) (internal quotation marks and citation omitted).

"If, on a motion [to dismiss] under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d); see also Sahu v. Union Carbide Corp., 548 F.3d 59, 67 (2d Cir. 2008).  Pursuant to Rule 12(d), the Court provided parties with an opportunity to submit supplemental materials.  (Order, Feb. 18, 2016.)

III.    DISCUSSION

    A.    <u>Scope of the Settlement Agreement</u>

Defendant Axesstel asserts that the Settlement Agreement does not extinguish the contractual terms governing the 2013 purchases of goods. That is incorrect, and, as a result, Axesstel's defenses and Counterclaims fail.

The Settlement Agreement provides that it "supersedes all prior agreements, whether written or oral, between the parties with respect to its subject matter," and that it is the "complete and exclusive statement of the terms of the agreement between the parties with respect to its subject matter." (Settlement Agreement ¶ 10.) Defendant Axesstel argues that the Settlement Agreement is a purchase plan, and its "subject matter" is the schedule of payment, not the warranties associated with the original purchases. (<u>See</u> Settlement Agreement ¶ 10.) That is incorrect. The Settlement Agreement relates to the sale of the goods at issue and payment thereof. It is certainly true that the Recitals section of the Settlement Agreement states that the "subject matter" is the "terms of repayment of Axesstel's debt to Telit." (<u>Id.</u> at 1.) However, the "debt" plainly incorporates the delivery of goods. There could be no "debt" if the goods were nonconforming. The Settlement Agreement's integration clause therefore forecloses defendant's Counterclaims and defenses as to allegedly nonconforming goods here.[7]

---

[7] It is true that the Settlement Agreement lacks a formal set of releases. It would have been better if such had been included. Nonetheless, the legal effect of the Agreement's integration clause is to erase any prior issues relating to the sale of the goods and substitute the payment terms of that agreement.

B.   Axesstel's Counterclaims

There are additional reasons why defendant's Counterclaims and defenses fail. In its Answer and Counterclaims, Axesstel asserts that one of the seven orders it had placed with Telit contained nonconforming products. Based on this allegation, it asserts counterclaims for breach of contract and breach of express and implied warranties. Axesstel has failed to raise a triable issue as to its Counterclaims.

1.   May 2011 Sales Term

Even if this Court were to put the Settlement Agreement aside, the Sales Terms foreclose the Counterclaims. Each of Axesstel's seven orders with Telit were governed by the Sales Terms, which explicitly provide that any claims are subject to a two-year statute of limitations. (Wagner Decl. Ex. A at 5-6, ¶ 15.) The Counterclaims accrued when the goods were delivered in early 2013; the statute of limitations for these claims therefore expired in early 2015.[8] The Sales Terms further provide that "[a]ll Products shall be deemed accepted by Buyer as conforming to this Agreement unless written notice of the claimed nonconformity is received by Telit within ten (10) days of delivery thereof." (Id. at 4, ¶ 8.) Again, it is undisputed that Axesstel failed to provide notice of nonconformity until two years after delivery.

---

[8]   Moreover, the Sales Terms state that any claims are subject to the jurisdiction of North Carolina courts. (Wagner Decl. Ex. A at 6, ¶ 20.)

11

Axesstel argues that the Sales Terms did not apply to the order of 15,000 units at issue in the Counterclaims because the document was not attached to that specific order. Yet, Axesstel admits that it <u>had</u> received the Sales Terms with respect to other, prior orders from Telit. The very first paragraph of the Sales Terms explicitly provides that "all sales and charges of Telit products . . . and services . . . shall be subject to these Sales Terms and Conditions." (<u>Id.</u> at 5, ¶ 1.) Thus, even if the document was indeed not appended to the 15,000-unit order, Axesstel was already on notice that the Sales Terms applied to all orders.[9]

Axesstel assented to, or at least created the appearance that it assented to, the Sales Terms, including the provision that the terms apply to all orders. The Sales Terms were attached to the first Sales Order and sent to Axesstel in a confirmation email dated February 25, 2013. (Wagner Decl. Ex. A, at 2-8.) The next day, Telit completed performance by shipping the order. (<u>Id.</u> at 9.) Telit again attached the Sales Terms to the second order, confirmed on March 14, 2013, in an email to Axesstel. This email not only confirmed the order but also specifically stated, "You'll find the Telit terms and conditions document attached." (<u>Id.</u> at 15-21.) Performance on that order also took place immediately. (<u>Id.</u> at 22-23.) The 15,000-unit order at issue in the Counterclaims was confirmed just nine days later,

---

[9]    The Court notes that the gravamen of Axesstel's opposition to this motion is that further discovery is necessary to determine whether the Sales Terms were appended to the order for the 15,000 units. However, the Court in reaching its conclusion construes this factual issue entirely in Axesstel's favor for the purposes of this motion, and assumes that the Sales Terms were not appended to that specific order.

on March 25, 2013.  (Id. at 31-32.)  In fact, all the orders were made within a three-month period.  (See id., at 5.)

Under New York law, "in the absence of fraud or other wrongful act on the part of another contracting party, a party who signs or accepts a written contract is conclusively presumed to know its contents and to assent to them."  Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir. 2004) (internal citations, quotation marks, and alterations omitted).  Here, Axesstel alleges no fraud.  It also does not allege that its conduct suggested failure to assent to the Sales Terms.  See Schnabel v. Trilegiant Corp., 697 F.3d 110, 119-20 (2d Cir. 2012) ("The conduct manifesting such assent may be words or silence, action or inaction."); Filanto, S.p.A. v. Chilewich Int'l Corp., 789 F. Supp. 1229, 1240 (S.D.N.Y. 1992) ("An offeree who, knowing that the offeror has commenced performance, fails to notify the offeror of its objection to the terms of the contract within a reasonable time will, under certain circumstances, be deemed to have assented to those terms."); Restatement (Second) of Contracts § 23 cmt. b (1981) ("Either the offeror or the offeree may be bound by an unintended appearance of assent created by his intentional conduct  . . . an offeror or offeree who should be aware of those terms may be bound in accordance with them if he manifests assent.").  Indeed, if Axesstel, a sophisticated business entity, was dissatisfied with the Sales Terms or concerned that the Sales Terms were not attached to some orders, "the time to say so [was] at the bargaining table," not years after the fact.  Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co., 660 N.E.2d 415, 421 (1995).

2. <u>Waiver</u>

Axesstel argues in the alternative that Telit, by providing a software patch for the 15,000-unit order, has waived the warranty limitations under the Sales Terms. "To establish waiver under New York law one must show that the party charged with waiver relinquished a right with both knowledge of the existence of the right and an intention to relinquish it." <u>Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.</u>, 707 F.2d 680, 685 (2d Cir. 1983). The record is devoid of any evidence that Telit "intentionally abandoned a known right." <u>Duobond Corp. v. Cong. Factors Corp.</u>, 359 N.E.2d 984, 987 (N.Y. 1976).

Furthermore, the Sales Terms contains an explicit non-waiver clause:

> Telit shall have no responsibility whatsoever for the integration, configuration, testing . . . support or maintenance of such end user product. . . To the extent Telit or its affiliates agree to review and provide any comments or suggested changes or improvements . . . such review will be performed strictly as a courtesy to buyer and Telit and its affiliates make no warranty and assume no responsibility whatsoever for any such comments, changes, or improvements, and any reliance thereon by buyer shall be at buyer's sole risk.

(Wagner Decl. Ex. A at 20-21.) When a contract, as the Sales Terms here, contains a non-waiver clause, the "clear and unambiguous" language of the contracts prevents "preclude[s] a finding of waiver." <u>Jefpaul Garage Corp. v. Presbyterian Hosp. in City of New York</u>, 462 N.E.2d 1176, 1177-78 (N.Y. 1984). Here, the patch that Telit provided was "strictly a courtesy" to Axesstel. In the absence of any evidence suggesting that Telit intentionally abandoned rights under the Sales Terms, there is no triable issue on the question of waiver.

14

### 3. Untimely Rejection

Even if the Sales Terms do not apply to the order of 15,000 units at issue in the Counterclaims, Axesstel nevertheless cannot prevail on its Counterclaims as matter of law.

First, Axesstel cannot prevail on its breach of contract counterclaim because by its own admission, it failed to pay Telit. To state a breach of contract claim under New York law, a plaintiff must allege substantial performance, as well as the existence of a contract, defendant's breach of the contract, and resulting damages. Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996); Niagara Foods, Inc. v. Ferguson Elec. Serv. Co., Inc., 975 N.Y.S.2d 280 (App. Div. 2013). It is undisputed that Axesstel did not perform its part of the prior purchase contract, a necessary element of a breach of contract claim.

Second, Axesstel cannot prevail on its counterclaims for breach of express and implied warranties because it did not give timely notice of nonconformity under the Uniform Commercial Code. N.Y. U.C.C. Law § 2-607 ("Where a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."); see also Quinn v. Walgreen Co., 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (dismissing breach of warranty claim for failure to allege timely notice); Burns v. Volkswagen of Am., Inc., 468 N.Y.S.2d 958, 959 (App. Div. 1983) (affirming summary judgment to defendants on "breach of warranty claim on the ground that plaintiff did not give timely notice of the alleged defect"). While typically, the

question of "timely rejection is a question of fact," in circumstances where "only one inference may be drawn as to the reasonableness of the time in which defendant rejected the goods, it becomes a question of law." New York City Off-Track Betting Corp. v. Safe Factory Outlet, Inc., 809 N.Y.S.2d 70, 74 (App. Div. 2006); see also J.N.K. Mach. Corp. v. TBW, Ltd., 916 N.Y.S.2d 718, 720 (App. Div. 2011); Tabor v. Logan, 495 N.Y.S.2d 67, 68 (App. Div. 1985).

Taking as true all the facts alleged by Axesstel, the only reasonable inference to be drawn is that the goods were not timely rejected. Axesstel received the goods in March 2013. Axesstel had never asserted prior to early 2015 that the goods were defective. Indeed, it entered into the Settlement Agreement with Telit in March 2014, a full year after delivery, without complaining of nonconformity.

Axesstel purchased the CC864 units for use with its own products. It alleges no reason why it would not be able to inspect the goods upon delivery. Thus, Axesstel had, as a matter of law, accepted the goods. See N.Y. UCC Law § 2-606; Microban Products Co. v. API Indus., Inc., No. 14 Civ. 41 (KPF), 2014 WL 1856471, at *16 (S.D.N.Y. May 8, 2014). Thus, Telit is entitled to recover the full contract price even if the goods are nonconforming. Cayuga Press of Ithaca Inc. v. Lithografiks Inc., 621 N.Y.S.2d 187, 188 (App. Div. 1995); Maggio Importato, Inc. v. Cimitron Inc., 592 N.Y.S.2d 325, 326 (App. Div. 1993).

C. <u>No Triable Issues Remain On Affirmative Claims</u>

Defendant has admitted that it failed to pay plaintiff pursuant to the Settlement Agreement. (Answer ¶ 9.) Thus, Axesstel cannot raise a triable issues on any of the elements of a breach of contract claim. <u>See</u> <u>Harsco Corp.</u>, 91 F.3d at 348.

Telit did not move for summary judgment on its second cause of action for unjust enrichment. However, the Court dismisses this claim because under New York law, unjust enrichment only applies when there is no contract between the parties and because Telit's unjust enrichment claim is wholly duplicative of its breach of contract claim. <u>See</u> <u>Rabin v. Mony Life Ins. Co.</u>, 387 F. App'x 36, 42 (2d Cir. 2010); <u>Cooper, Bamundo, Hecht & Longworth, LLP v. Kuczinski</u>, 789 N.Y.S.2d 508, 510 (App. Div. 2005).

D. <u>Affirmative Defenses Fail as a Matter of Law</u>

Axesstel alleges a number of affirmative defenses, but only defends three in opposition to summary judgment. The Court has already addressed the waiver defense above. The other two defenses of equitable estoppel and delivery of defective goods both rest on the premise that Axesstel should be excused from its obligations under the Settlement Agreement because it did not know the goods were defective when it entered in the Settlement Agreement. These defenses fail for substantially the same reasons as the Counterclaims. The Court notes that as to the equitable estoppel defense specifically, Axesstel has failed to allege reasonable reliance, nor is there any allegation that Telit had prior knowledge of the

17

nonconformity.  In re Vebeliunas, 332 F.3d 85, 93 (2d Cir. 2003) ("The doctrine of equitable estoppel . . . [requires] justifiable reliance upon the [estopped party's] words or conduct.  Under New York law, the elements of equitable estoppel are with respect to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts.").

      E.     <u>Amendment Would Be Futile</u>

As the Court has fully resolved all claims in this Opinion and Order, and the proposed Amended Answer and Counterclaims would not save Axesstel's claims or defenses, amendment in this action would be futile.  See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss . . . .").

IV.    CONCLUSION

The Court has reviewed the other arguments set forth in the submissions and finds that they are without merit.  For the reasons set forth above, plaintiff's motion to dismiss the Counterclaims and its motion for summary judgment are both GRANTED.  Defendant's cross motion to amend is DENIED.  The remaining claim

by plaintiff for unjust enrichment is DISMISSED.  The Clerk of Court is directed to terminate the motions at ECF Nos. 34, 40, and 50 and to terminate this action.

    SO ORDERED.

Dated:    New York, New York
           April 18, 2016

                                            KATHERINE B. FORREST
                                            United States District Judge